**SHARGEL v. HOLLIS et al.**

United States District Court,
S. D. New York.

April 27, 1954.

Harry D. Shargel, pro se.

J. Edward Lumbard, U. S. Atty., for the Southern Dist. of N. Y., New York City, for defendants, George M. Vetter, Jr., Harold J. Raby, Asst. U. S. Attys., New York City, of counsel.

DIMOCK, District Judge.

This is an action in equity by plaintiff, a civil service employee of the Army, having veteran status, for relief against separation from the service.

Defendants, Brigadier General Robert P. Hollis, Commanding General of New York Quartermaster Purchasing Agency, hereinafter referred to as NYQMPA, James J. Reilly, Chief of the Civilian Personnel Office, NYQMPA, George M. Clarke, Jr., incumbent of the position of Chief of the Legal Office of NYQMPA, and Frederick N. Jones, named to the position of Chief of the Legal Office of the Quartermaster Inspection Service Command, hereinafter referred to as QMISC, move to dismiss the suit on the ground that the complaint fails to state a claim upon which relief can be granted and the further ground that there is a lack of an indispensable party, the United States Civil Service Commission. Plaintiff moves for an injunction pendente lite restraining defendants from separating plaintiff from the service or transferring defendant Jones to the position to which Jones has been named in QMISC.

The motion to dismiss, which I shall take up first, is based principally on the charge that plaintiff has failed to exhaust his administrative remedies. If there is no administrative remedy for the injury of which plaintiff complains he cannot be kept out of court for failing to exhaust one. My first question is, therefore, whether such an administrative remedy exists.

The fundamental injury alleged by plaintiff is that, when he was deprived of employment by reduction in force, defendants, pursuant to a deliberate plan to injure him, kept him from transferring to a position, to which he would have been entitled, by abolishing the position occupied by defendant Jones so that Jones, thus released, filled the position to which plaintiff would otherwise have been entitled.

Plaintiff alleges that this devious plan to injure him was the result of enmity that he had aroused in his superiors when he took grievance proceedings attacking the filling of positions in the newly created NYQMPA by lawyers formerly serving an organization known as Armed Services Textile and Apparel Procurement Agency, hereinafter referred to as ASTAPA. How that came about

will appear from the necessarily detailed statement that follows.

On and before October 30, 1953, QMISC and ASTAPA were two separate organizations existing side by side, each with its separate legal office. The Chief of the Legal Office of QMISC was one Allen and the Assistant Chief was plaintiff. The Chief of the Legal Office of ASTAPA was defendant Clarke and the Assistant Chief was defendant Jones.

Effective October 31, 1953, ASTAPA was dissolved.

Effective November 1, 1953, NYQMPA was activated, the former QMISC Legal Office positions of Chief and Assistant Chief were transferred to NYQMPA and a new Chief position was created for QMISC. Instead of transferring Allen and plaintiff to NYQMPA with their positions, the step which first aroused plaintiff was taken: the Legal Office of ASTAPA was transferred to NYQMPA with its personnel and defendants Clarke and Jones respectively took the positions formerly held by Allen and plaintiff. Allen took the newly created position of Chief of the Legal Office of QMISC and plaintiff transferred to NYQMPA where he says that he was subjected to what he calls a reduction in rank and what defendants say was a detail to work of a lower rank.

Plaintiff then brought the grievance proceedings above referred to, claiming that the assignments of the men from ASTAPA to the Chief and Assistant Chief positions were unlawful and that he, as the ranking man in the lawful staff of NYQMPA, was entitled to the position of Assistant Chief. He alleges that he brought these proceedings in the face of a threat by defendant Hollis that his career would be adversely affected if he did so.

On January 28, 1954, plaintiff was given a Reduction in Force Notice effective March 3, 1954, the position of Assistant Chief of the Legal Office of NYQMPA was abolished and Jones, the released incumbent, was named in Allen's place to the position of Chief of the Legal Office of QMISC which had been newly created in November. Jones continued to do the same work as formerly, and, before Jones had actually taken the position of Chief of the Legal Office of QMISC, plaintiff brought this action and obtained a temporary restraining order which has prevented Jones from doing so.

Unless Jones takes the position of Chief of the Legal Office of QMISC, plaintiff is entitled to it. Plaintiff claims that it was to prevent his getting it that Jones' position was abolished and Jones was caused to supplant Allen.

The basis for all of this is the grade and veteran's preference system by which the rights of certain personnel to certain positions are determined. Plaintiff is a grade 13. Jones is a grade 13 but for other reasons has priority over plaintiff. Allen was a grade 14. The old position of Chief of the Legal Office of QMISC which Allen held was a 14. The position of Assistant Chief was a 13. When these two positions were transferred to NYQMPA they retained their old grades. The new position of Chief of the Legal Office of QMISC is a 13. Allen chose to take it, in spite of his 14 grade, when he was told that defendant Clarke would have Allen's old 14 position in NYQMPA. So far as retention rights are concerned, however, a 14 employee who accepts a reduction in grade to take a 13 position is in no better case than a 13 employee. Because of veteran status, Jones, a 13, has priority over plaintiff, a 13, and both have priority over Allen if he is treated as a 13 as he must be with respect to the new position of Chief of the Legal Office of QMISC. Thus plaintiff, when faced with ouster by reduction in force, could have supplanted Allen had it not been that Jones was released by abolition of the position of Assistant Chief of the Legal Office of NYQMPA and supplanted Allen first.

It is thus that the principal injury complained of by plaintiff is the abolition of the position of Assistant Chief of the Legal Office of NYQMPA.

Plaintiff alleges that he was told that the bona fides of the abolition of a posi-

tion was not subject to administrative review. At a second hearing of this motion, called for that purpose, I requested counsel to brief that question. Defendants have been unable to cite any authority for such review in statute or regulation, but submit an affidavit that the Acting Chief, Civilian Personnel Division, Office of The Quartermaster General, has assured the deponent that such a review would be allowed. It is conceded, however, that no such review has ever before been allowed though the reason stated is that no case has yet arisen.

■ In the absence of more specific citation of authority for administrative remedy for the principal injury of which plaintiff complains, I cannot hold that he is barred for failure to exhaust an administrative remedy.

Plaintiff has alleged many other grievances which I find it unnecessary to enumerate. I have limited my discussion to the injury which gives plaintiff standing to sue without exhausting any administrative remedies: the malicious abolition of Jones' job.

■ Passing to the question of lack of necessary parties, we find that plaintiff is not seeking to review the action of any subordinate of the omitted party, the United States Civil Service Commission. If he succeeds in obtaining a determination that the attempted abolition of the position of Assistant Chief of the Legal Office of NYQMPA was ineffective, he will need no action of the Civil Service Commission to give him the fruits of his victory. The case on which defendants rely, Reeber v. Rossell, 2 Cir., 200 F.2d 334, was one where a Regional Director of the Second United States Civil Service Region was a defendant so that it came within the rule of such cases discussed and followed in De Pinho Vaz v. Shaughnessy, D.C.S.D.N.Y., 112 F.Supp. 778, affirmed 2 Cir., 208 F.2d 70, which refuse action against a subordinate where the superior is outside of the control of the court. Nothing of the sort appears here.

■ Although defendants move to dismiss only on the ground of failure to exhaust administrative remedies and failure to join an indispensable party, I cannot ignore the question whether the complaint states any claim upon which relief can be granted. That is especially true in the light of plaintiff's motion for an injunction pendente lite.

■ The ultimate relief that plaintiff wants is that he be given the position of Chief of the Legal Office of QMISC despite the abolition of the position of Assistant Chief of the Legal Office of NYQMPA and the consequent release of Jones who would be entitled to the position of Chief of the Legal Office of QMISC in priority to plaintiff. This would require an injunction against the defendants' refusing to give plaintiff the desired position on the ground that the abolition of Jones' position had entitled Jones to the job. It must be conceded that that relief would be very much like a mandatory injunction directing government officers to give the job to plaintiff and that a mandatory injunction against government officers is very much like a writ of mandamus. The District Courts, except in the District of Columbia, have no power to issue writs of mandamus except in aid of their general jurisdiction. Covington & C. Bridge Co. v. Hager, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; Feyerchak v. Hiatt, D.C.M.D.Pa., 7 F.R.D. 726. This problem has often faced the District Courts and in no case such as this has relief been denied. Injunctions against public officials, mandatory in form or substance, were authorized after careful consideration in George W. Armbruster, Jr., Inc., v. City of Wildwood, D.C.D.N.J., 41 F.2d 823, John C. Winston Co. v. Vaughan, D.C.W.D.Okl., 11 F.Supp. 954, and National Radio School v. Marlin, D.C.N.D.E.D.Ohio, 83 F.Supp. 169. Judge Augustus N. Hand, when on the district bench, gave it as his opinion that there was a distinction "between an application for a mandamus requiring an official in general to take certain action and an injunction restraining his refusal upon some particular ground which he sets up as a consideration legally controlling". Wilson v. Bowers, D.C.S.D.

818

N.Y., 14 F.2d 976, 977. Within the rule stated by Judge Hand, a decree for plaintiff in this case could be couched in the form of an injunction against refusing the plaintiff the desired position of Chief of the Legal Office of QMISC on the ground that Jones was entitled to it because of the purported abolition of the position of Assistant Chief of the Legal Office of NYQMPA and the consequent release of Jones who would be entitled to the position desired by plaintiff.

■■ On the matter of the sufficiency of the complaint there remains the question whether plaintiff has stated a claim on which, if it were proved, he could succeed. The rule here is very liberal. If the court can find that any possible valid claim may be proved under the complaint it must not be dismissed. Dioguardi v. Durning, 2 Cir., 139 F.2d 774. I cannot say that plaintiff will be unable to prove a valid claim under his allegations that the position held by Jones was abolished for the express purpose of injuring plaintiff.

■ That leaves for consideration the motion for an injunction pendente lite. Plaintiff says that, if Jones is permitted to take the position of Chief of the Legal Office of QMISC, it will be impossible to put plaintiff in that position even if it be determined that the abolition of Jones' position was unlawful. That brings us back to the power of the District Court to issue orders in the nature of mandamus. I think that there is sufficient doubt as to the court's power to oust Jones in the event of a decision favorable to plaintiff that plaintiff ought to have an injunction pendente lite against the occupancy by Jones of the position of Chief of the Legal Office of QMISC.

■ An injunction against separating plaintiff from the service pendente lite is a different matter. If plaintiff is separated and it proves on the trial that his separation was in bad faith he will be entitled to recover his damages. See Gadsden v. United States, 100 F.Supp. 455, 119 ct.cl. 86. The final decree can, within the rule of Wilson v. Bowers, 14

F.2d 976, supra, protect his rights to the position of Chief of the Legal Office of QMISC by enjoining defendants from refusing it to him on the ground that he was separated from the service.

The injunction pendente lite will therefore be limited to enjoining the occupancy of the position of Chief of the Legal Office of QMISC by Jones or anyone other than plaintiff.

If such an injunction would work a hardship on defendants it may be avoided by a stipulation by all defendants including Jones that the position will be occupied by Jones pendente lite and will be vacated by him in the event of a determination in this action that the abolition of the position of Assistant Chief of the Legal Office of NYQMPA was unlawful.

Motion to dismiss denied.

Motion for injunction pendente lite granted in part and denied in part.